# In the United States Court of Federal Claims

|  |  |  |
|---|---|---|
| DANIEL W. LOWRY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-682C |
| v. | ) | (Filed: April 8, 2021) |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

*Wojciech Kornacki*, Law Office of Philip D. Cave, Washington, DC, for Plaintiff.

*Michael D. Austin*, Trial Attorney, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, Washington, DC, with whom were *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, for Defendant. *Lieutenant Kevin R. Griffin*, Office of the Judge Advocate General, General Litigation Division, U.S. Department of the Navy, Washington Navy Yard, DC, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Chief Judge.**

The plaintiff in this Military Pay Act case, Daniel W. Lowry, is a former Steelworker Chief Petty Officer ("SWC") and Master Diver who—during his more than nineteen years of service in the United States Navy ("the Navy")—performed duties involving underwater construction and repair. In October of 2014, the Navy notified Mr. Lowry of its intent to separate him before the conclusion of his enlistment period based on his commission of a "serious offense." Admin. R. ("AR") 66. Specifically, the Navy had recently discovered that, during his prior enlistment, Mr. Lowry had twice been convicted of driving under the under the influence of alcohol, first in 2001 and then again in 2010.

An administrative separation board recommended that Mr. Lowry be discharged but that the discharge be suspended for one year. His Commanding Officer ("CO") concurred with the separation board's recommendation that Mr. Lowry be discharged but did not agree that the discharge should be suspended. He recommended that Mr. Lowry be separated from the Navy "without delay" because—allegedly in violation of Navy regulations—Mr. Lowry had not reported the two DUI convictions to his chain of command or the security manager, id. at 52; nor had he reported the DUIs as "alcohol-related incidents," which would have resulted in at least a temporary suspension of his diving duties, id. at 27.

The Navy discharged Mr. Lowry almost a year after the separation board transmitted its recommendation to the Separation Authority ("SA"). Mr. Lowry unsuccessfully sought relief from the Naval Discharge Review Board ("NDRB") and the Board for Correction of Naval Records ("BCNR"). He then filed the present suit alleging that the BCNR's decision upholding his separation was arbitrary, capricious, and/or contrary to law. He requests that the Court order the BCNR to correct his records to reflect his retirement from the Navy upon completing twenty years of service, and that he be afforded backpay, including lost retirement benefits.

Currently before the Court are the parties' cross-motions for judgment on the administrative record, as well as Mr. Lowry's Motion to Supplement the Administrative Record. For the reasons set forth below, Mr. Lowry's motion to supplement the administrative record, ECF No. 21, is **GRANTED-IN PART** and **DENIED-IN-PART**. His motion for judgment on the administrative record, ECF No. 11, is **GRANTED**, and the government's cross-motion for judgment on the administrative record, ECF No. 17, is **DENIED**. The case is **REMANDED** to the BCNR for the correction of Plaintiff's military record to reflect retirement upon completion of twenty years of service in the United States Navy.

## BACKGROUND

### I.     Mr. Lowry's Service Record

Mr. Lowry enlisted in the Navy on December 19, 1996. AR 36. After that initial enlistment ended, he re-enlisted for a new five-year period that began on April 15, 2012. Id. at 30. At the time of his separation on March 3, 2016, Mr. Lowry was an advanced Underwater Construction Diver, had attained the rank of Chief Petty Officer, and had served in the Navy for nineteen years, two months, and fifteen days. Id. at 73.

Beginning in 1999, and throughout the rest of his period of service, Mr. Lowry was classified as an underwater construction technician. Id. In that position he performed or supervised the performance of underwater construction and repair. See, e.g., id. at 343–94.

In 2003, Mr. Lowry was deployed to Iraq for three months with the Marine Expeditionary Force. Id. at 27. According to his complaint, the unit in which he served "was responsible for securing bridges and ensuring that M1A2 tanks and other armored vehicles could safely cross bridges on their way to Baghdad." Compl. ¶ 21, ECF No. 1.

During his deployment to Iraq, Mr. Lowry's unit "was exposed to frequent small arms as well as heavy artillery and mortar fire," and lost eleven of its marine members. AR 27. As a result, the unit received a Presidential Citation "for extraordinary heroism and outstanding performance in action against enemy forces in support of Operation IRAQI FREEDOM" from March 21 to April 24, 2003. Id. at 75.

Mr. Lowry received numerous other awards and medals during his period of service. Id. at 73. Further, up until the time of the performance evaluation discussed below, which covered July 27, 2013 through September 15, 2014 (i.e., the period during which his CO became aware of his convictions for DUIs committed in 2001 and 2009), see id. at 393–94, Mr. Lowry met or

exceeded all of his performance standards, and his evaluations included consistent positive feedback regarding his skills, attitude, and leadership abilities.[1]

Indeed, even Mr. Lowry's final two performance evaluations were positive ones, notwithstanding that they covered the periods both during and after his CO at the Naval Facilities Engineering and Expeditionary Warfare Center ("NAVFAC EXWC") recommended his immediate separation. In his evaluation for the period between September 2014 and July 2015,

---

[1] See, e.g., AR 354 (March 2001 appraisal observing that, "[e]nergetic and enthusiastic, PO Lowry tackles all tasks with dedication and persistence, setting a preceden[t] for his peers to emulate"); id. at 356 (March 2002 appraisal stating that "Petty Officer Lowry is an extremely competent and motivated Second Class Petty Officer," and that "his performance this period has been outstanding"); id. at 358 (October 2002 appraisal stating that "Petty Officer Lowry is a sharp and energetic 'go-getter' who seeks out the most demanding tasks," is "[c]ontinually sought after for his innovative ideas," and "is an excellent diver"); id. at 360 (November 2003 appraisal observing that "Petty Officer Lowry is a competent and motivated First Class Petty Officer, and his performance this period has been nothing but outstanding"); id. at 362 (April 2004 appraisal characterizing Mr. Lowry as an "extremely competent and motivated First Class Petty Officer, who seeks out the most challenging tasks and carries them out meticulously"); id. at 364 (November 2004 appraisal stating that his "performance has been nothing short of spectacular"); id. at 366 (November 2005 appraisal noting his "extraordinary leadership skills as a committed mentor to junior personnel" and "[u]ncompromising superior performance"); id. at 368 (August 2006 appraisal highlighting his "[e]xceptional performance," "[t]remendous abilities," and that he is a "[d]edicated and skilled mentor"); id. at 370 (December 2007 appraisal stating that "Petty Officer Lowry is a superb leader, exemplary technician, and a primary driver behind the mission success"); id. at 372 (December 2008 appraisal noting that "Petty Officer Lowry is an absolute professional" and had displayed "spectacular leadership"); id. at 374 (August 2009 appraisal noting that "Petty Officer Lowry has displayed excellent leadership and management skill and has produced outstanding results at this command," recommending that he be detailed "to the most challenging assignments!"); id. at 376 (December 2009 appraisal stating "Chief Lowry is a talented and motivated leader that displays all the leadership skills needed in today's Navy" which "have allowed this Command to move forward and shine at every opportunity"); id. at 380 (June 2010 appraisal opining that "Chief Lowry's professional knowledge, mentorship and infectious energy has already had a positive impact . . . a superb leader and manager that has earned the trust of not only the chain of command, but the personnel that work under him" and asserting that he had "clearly proven that he is a true asset to the HCF and the UCT community!"); id. at 382 (September 2010 appraisal observing that "Chief Lowry continuously displays the leadership and vision required to excel in the Navy. His potential in the UCT community and the NCF knows no boundaries . . . flawlessly executes any and all tasking. He is an outstanding leader and manager."); id. at 384 (September 2011 appraisal stating that "Chief Lowry is an outstanding Chief Petty Officer who executes all assigned orders in a decisive and efficient manner. A true mission oriented leader."); id. at 386 (June 2012 appraisal calling Mr. Lowry "a mission focused leader who inspires his personnel to give their very best . . . [and] fosters an environment that cultivates personal and professional growth for his Sailors."); id. at 388 (July 2013 appraisal praising his "[u]nparalleled [l]eadership" and noting that "he delivers safe and successful mission accomplishment every time").

for example, his CO observed that he was a "meticulous manager and a force multiplier" and a "[h]ighly skilled leader with a 'Can Do' attitude who continues to deliver top-notch results." Id. at 390. The evaluation that covered the period between July 2015 through his discharge on March 3, 2016 similarly characterized Mr. Lowry as a "hard working manager with over 14 years of experience leading underwater construction projects and mentoring Sailors." Id. at 392. It further states that Mr. Lowry was "a highly motivated, accomplished, and deeply driven Sailor," who was "completing a 19[-]year career in the United States Navy," and who would "bring a wealth of specialized expertise to any organization." Id.

## II.    Discovery of DUI Convictions

The events that led to Mr. Lowry's early discharge had their genesis in allegations of infidelity that his estranged wife communicated to his unit in 2013 while the couple was in the midst of divorce proceedings. Compl. ¶ 30. The allegation triggered an inquiry by the Navy Criminal Investigation Service ("NCIS") that began on November 7, 2013 but then ended in early 2014 because Mr. Lowry's wife declined to cooperate in the investigation. Id. ¶ 31–33.

As a result of the investigation, Mr. Lowry's superiors learned of unrelated misconduct that occurred during his prior enlistment. Id. ¶ 32. Specifically, it learned that he had pleaded guilty to driving under the influence of alcohol on October 17, 2001, and that he had been arrested for a DUI on December 9, 2009, for which he pleaded guilty on April 16, 2010. AR 26.

Pursuant to Navy Military Personnel Manual ("MILPERSMAN") 1306-912 paragraph 12(a), a diver's diving qualifications may be revoked if his commanding officer determines "that the member is no longer suitable for assignment[s]" consistent with his classification code. Further, MILPERSMAN 1306-912 ¶ 12(c)(4) provides that when an underwater construction technician is "identified as having [an] alcohol abuse disorder," they "will be locally suspended by their CO from duty pending the outcome of screening, disciplinary counseling, and or rehabilitation procedures as outlined in [Office of the Chief of Naval Operations, Drug and Alcohol Abuse Prevention and Control Instruction ("OPNAVINST") 5350.4D]."

Consistent with these provisions, Mr. Lowry's diving qualification was suspended after his superiors became aware of his DUIs. See AR 169. The record is unclear as to precisely when the Navy imposed the suspension. It reveals, however, that Mr. Lowry was referred to the Substance Abuse Rehabilitation Program for a substance abuse evaluation, and that he was screened for alcohol abuse or dependency on August 22, 2014. Id. at 176–79 (Drug and Alcohol Program Advisor report). The evaluation revealed that Mr. Lowry did not "meet DSM IV criteria for alcohol abuse or dependency." Id. at 176. The Program Advisor noted a lack of risk factors and recommended that, "[g]iven [the] level of risk noted," Mr. Lowry return to duty. Id. at 178.

As discussed in greater detail below, on October 17, 2014, Mr. Lowry's CO provided him with formal notice that he had been referred for administrative separation pursuant to MILPERSMAN 1910-142: "Separation By Reason Of Misconduct – Commission Of A Serious Offense." Id. at 66 (Administrative Separation Processing Notice). The notice specified that the

two "reasons for administrative separation processing" were the prior DUIs as well as the offense that was the subject of the aborted NCIS investigation. Id.

The next week, on October 24, 2014, Mr. Lowry petitioned to have his diving qualifications reinstated, as is permitted by MILPERSMAN 1306-912 paragraph 13. Id. at 169. Three of the four officers who reviewed Mr. Lowry's request recommended that it be granted, in light of the recent evaluation finding a lack of evidence of current or potential alcohol abuse. Id. at 169–70. Mr. Lowry's CO disagreed, however, and denied the request for reinstatement on November 12, 2014. Id. at 169. The CO explained that the second DUI had "caused [him] to lose confidence in [Mr. Lowry's] ability to exercise sound judgment, in [his] reliability, and [in his] personal conduct as a representative of the Navy." Id. In fact, he opined, given that the Substance Abuse Rehabilitation Program had determined Mr. Lowry was not alcohol dependent, "these substantiated drunk driving offenses are [a] clear indication of [his] lack of personal responsibility towards the expectations of conduct in the Navy and demonstrate a disregard for the safety of [himself] and [his] teammates." Id. The CO decided that Mr. Lowry's diving qualifications should "remain suspended pending the outcome of the administrative board that [would] determine [his] ability for future service." Id. He noted that he would "look favorably" upon a subsequent request from Mr. Lowry for reinstatement of his diving qualifications and for return to diving duty "if that independent body, and subsequent decision review" found Mr. Lowry "capable of continued service." Id.

In the meantime, on October 30, 2014 (after the issuance of the separation notice but before the approval of Mr. Lowry's request for reinstatement of his diving qualifications), Mr. Lowry's CO signed off on his performance evaluation for the period beginning July 27, 2013 and ending September 15, 2014. Id. at 393–94. In the evaluation, the CO rated Mr. Lowry's performance substandard as to two required performance traits: professionalism and character. Id. The CO stated that Mr. Lowry had "demonstrated a lack of integrity as a [Chief Petty Officer] by failing to report a second DUI conviction." Id. at 394. He concluded that "[w]hile SWC Lowry has shown he can execute the most complicated underwater construction projects, his lack of integrity has resulted in a loss of trust and confidence." Id.

Mr. Lowry challenged this performance evaluation in a November 25, 2014 statement. Id. at 69–70. He objected to the evaluation's focus on his failure to report the DUI offense he committed in 2009. Id. at 69. He observed that "[t]he applicable regulation in 2009 was OPNAVINST 5350D," and contended that the self-reporting requirement contained in the instruction had been found unconstitutional by the U.S. Court of Appeals for the Armed Forces in United States v. Serianne, 69 M.J. 8, 11 (C.A.A.F. 2010). Id. He further noted that the Navy issued NAVADMIN 373/11 in response to Serianne in 2011. Id.[2] "Not reporting this incident in 2009," he contended, was "well within [his] constitutional rights." Id. He also asserted that it was

_____
[2] Under NAVADMIN 373/11, service members who are arrested or criminally charged by civil authorities are required to self-report, but are only required to disclose the date, the authority, and the offense for which they were arrested or charged, and not any of the underlying details of the arrest or charge. AR 297–98. The issuance also provided that commanders "shall not impose disciplinary action for failure to self-report an arrest or criminal charges prior to the date of this NAVADMIN," i.e., before December 8, 2011. Id. at 298.

improper for an evaluation of his performance over the period from July 2013 to September 2014 to take into account a DUI that occurred in 2009. Id. at 69–70.

In a December 16, 2014 letter, Mr. Lowry's CO rejected his objections to the evaluation. Id. at 68. He opined that, under Navy regulations, all commissioned officers and senior enlisted service members were required to report "any substantiated DUI/DWI offense." Id. In particular, he noted that NAVADMIN 373/11 requires "all commissioned officers and senior enlisted (E7 and above) to report any conviction," and that Mr. Lowry's reliance upon Serianne (which concerned the duty to report arrests and charges, as contrasted with convictions) was unavailing. Id.

## III.   Proceedings Before the Administrative Separation Board

### A.   Relevant Regulatory Provisions

Two related regulatory regimes govern the separation of Navy servicemembers. First, pursuant to 10 U.S.C. § 1169(1), the Secretary of Defense has promulgated Department of Defense Instruction ("DODI") 1332.14 to establish "procedures governing administrative separation of enlisted Service members from the Military Services." DODI 1332.14 § 1(b), Pl.'s App. Accompanying Pl.'s Mot. for J. on the Admin. R. Pursuant to RCFC 52.1(c) ("App. to Pl.'s MJAR") at 3, ECF No. 11-1; see also id. encl. 5, § 3a–3b, App. to Pl.'s MJAR at 13–14. Second, the Secretary of the Navy has issued MILPERSMAN 1910, whose provisions concern the administrative separation of enlisted Navy service members.

As relevant to the present case, MILPERSMAN 1910-152 paragraph 2 requires that a service member who incurs a second DUI after June 4, 2009 be processed for administrative separation, unless a waiver is obtained. MILPERSMAN 1910-152 (entitled "Separation by Reason of Alcohol Rehabilitation Failure or Multiple Driving Under the Influence (DUI)/Driving While Intoxicated (DWIs)"). MILPERSMAN 1910-152 paragraph 6 further provides that separations based on multiple DUIs are to be processed in accordance with the procedures set forth in MILPERSMAN 1910-142: Separation by Reason of Misconduct – Commission of a Serious Offense. And MILPERSMAN 1910-142 authorizes the separation of Navy servicemembers based on the commission of a serious offense if "the offense would warrant a punitive discharge . . . for the same or closely related offense." MILPERSMAN 1910-142 ¶ 2.

A service member who is subject to administrative separation is afforded a number of rights under the applicable Navy issuances. Among other things, DODI 1332.14 guarantees the member the right to receive notice of: (1) each of the bases of the member's proposed separation, "including the circumstances upon which the action is based"; and (2) "reference to the applicable provision of the [Navy's] implementing regulation." DODI 1332.14 encl. 5, § 3a(1), App. to Pl.'s MJAR at 13. Similarly, MILPERSMAN 1910-402 requires the Navy to inform the service member of "the basis of the proposed separation, including the circumstances upon which the action is based, and a reference to the applicable provisions of the [MILPERSMAN]." MILPERSMAN 1910-402 ¶ 3.

During the separation proceeding itself, a service member is guaranteed the right to "submit written or recorded matter for consideration by the board." DODI 1332.14 encl. 5, § 3e(6)(b), App. to Pl.'s MJAR at 17; see also MILPERSMAN 1910-512 ¶ 1 (guaranteeing a service member's rights to "testify on his or her own behalf," "submit written or recorded matter for consideration by the board," call and question witnesses, and present argument). Service members also have "[t]he right to obtain copies of documents that will be forwarded to the separation authority supporting the basis of the proposed action." DODI 1332.14 encl. 5, § 3a(5), App. to Pl.'s MJAR at 13.

MILPERSMAN 1910-518 paragraph 1(a) provides that "[t]he board must determine whether each basis set forth in the notice of proposed separation is supported by a preponderance of evidence." It is then to make "a single recommendation to separate or retain the respondent in the Navy." MILPERSMAN 1910-518 ¶ 1(b). "If the board recommends separation, it may recommend that the separation be suspended per the guidance in MILPERSMAN 1910-222." Id. In addition, "[i]f separation or suspended separation is recommended, the board will recommend a characterization of service or description of separation per the guidance in MILPERSMAN 1910-300." Id. "[I]f the board finds misconduct, and recommends retention or suspended separation for a **mandatory processing basis,** then the findings and recommendations must be forwarded to Navy Personnel Command (NAVPERSCOM) for final action." Id. n.2. A service member in such circumstances "may not be retained without the expressed approval of NAVPERSCOM." Id.

In accordance with MILPERSMAN 1910-600, the board transmits its recommendation and the record of its proceedings (including, among other items, the comments of the service member's CO) to the Separation Authority ("SA"). MILPERSMAN 1910-600 ¶ 3 (sample letter of transmittal listing "[c]omments of the commanding officer" as information to be submitted to the SA). The SA makes the final retention or separation decision. MILPERSMAN 1910-704 ¶ 1. For involuntary separation of active duty members who have eighteen or more years of total active military service—such as Mr. Lowry—the Chief of Naval Personnel is the SA. Id. ¶ 8(a).

MILPERSMAN 1910-710 provides that in cases involving mandatory processing, if the administrative board "finds a preponderance of evidence supports one or more of the reasons for separation and recommends [a] suspended separation," the SA may approve the board's findings and disapprove of the suspension. MILPERSMAN 1910-710 ¶ 1(b); see also MILPERSMAN 1910-518 ¶ 1(b) ("A recommendation to suspend the separation is not binding on the [SA]."). On the other hand, if the SA agrees that the separation should be suspended, the SA must secure the approval of the Commander of Naval Personnel to authorize such suspension. MILPERSMAN 1910-710 ¶ 1(b).

## B.      Separation Board Proceedings

As noted, on October 17, 2014, Mr. Lowry received formal notice that he had been referred for administrative separation based on misconduct, i.e., the commission of serious offenses under MILPERSMAN 1910-142. AR 66. The notice stated two bases for Mr. Lowry's separation: (1) commission of a serious offense described in the NCIS investigative report; and (2) commission of a serious offense "as evidenced by multiple DUIs." Id.

The administrative separation board convened to consider the allegations against Mr. Lowry on February 24 and 25, 2015. Id. at 54, 60. Mr. Lowry testified at the hearing, as did several character witnesses. Id. at 57–59. The board also considered the relevant MILPERSMAN sections, the October 17, 2014 notice sent to Mr. Lowry, court records of the DUIs, and the report of the NCIS investigation, all of which the Navy Recorder serving as prosecutor placed into the record. Id. at 55–56. Based on the record before it, the separation board unanimously found that the preponderance of the evidence supported the finding that Mr. Lowry committed multiple DUI offenses, but did not support a finding of misconduct based on the NCIS investigation. Id. at 61.

DODI and Navy regulations provide that, when determining whether separation is warranted based on the commission of a serious offense, the separation board is obligated to consider: (1) the seriousness of the offense; (2) the likelihood of the misconduct reoccurring; (3) the service member's potential for future military service; and (4) the service member's military record. MILPERSMAN 1910-212 ¶ 1; see also DODI 1332.14 encl. 4 § 1b(4), App. to Pl.'s MJAR at 4–5 (explaining that the board should consider the service member's "[i]ntire military record," excluding "[i]solated incidents and events that are remote in time").

In this case, the board recommended that Mr. Lowry be separated but that his separation be "suspended" for twelve months. AR 61; see MILPERSMAN 1910-222 ¶ 1(a) (stating that except as otherwise prohibited "a separation may be suspended for a period of not more than 12 months, if the circumstances of the case indicate a reasonable likelihood of rehabilitation").[3] It also recommended that Mr. Lowry's service be characterized as "Other Than Honorable." AR 61.

## C.   Letters of Deficiency

On February 27, 2015, Mr. Lowry's counsel submitted a letter of deficiency for the record in accordance with MILPERSMAN 19-516. Id. at 63–64. He requested that the board's separation recommendation be set aside, or in the alternative, "that the recommendation for suspension [of separation] be honored and the characterization of discharge be changed to General (Under Honorable Conditions)." Id. at 63.

Counsel argued that the relief he sought should be granted because—despite his request to the Recorder that the Navy provide him with all relevant evidence—the command had "withheld exculpatory evidence." Id. Specifically, it had not given counsel a copy of the substance abuse screening report which, as described above, reflected a finding that Mr. Lowry was not at risk of alcohol abuse or dependence. Id. Counsel argued that the report was relevant to

---

[3] The regulations state that "[d]uring the suspension, the member shall be afforded an opportunity to meet appropriate standards of conduct and performance." MILSPERSMAN 1910-222 ¶ 1(b). It further provides that, "[u]nless sooner vacated or remitted, execution of approved separation shall be remitted upon completion of the probationary period, upon termination of the member's enlistment or period of obligated service (OBLISERV), or upon decision of the SA that the goal of rehabilitation has been achieved." Id. ¶ 1(c).

addressing two of the four factors that the regulations required the board to consider in making a recommendation about retention or separation, i.e., the likelihood of Mr. Lowry's misconduct reoccurring and his potential for future military service. Id. In addition, counsel argued that the DUI incidents were not sufficiently severe and were too remote in time to justify an "Other Than Honorable" characterization of Mr. Lowry's service. Id. at 64.

Counsel supplemented his argument regarding the characterization of service in a March 20, 2015 addendum to the letter of deficiency. Id. at 65. In that addendum, counsel pointed out that the board's characterization of service recommendation was inconsistent with MILPERSMAN 1910-306, which prohibits the use of "[r]ecords of activities from prior enlistments or periods of service" to characterize service. Id.; see also MILPERSMAN 1910-306 ¶ 1(a).

### D.      Commanding Officer's Comments

On March 24, 2015, Mr. Lowry's CO provided comments to the board's recommendations for the record. AR 52–53. The CO concurred with the board's finding that the evidence supported a charge of "misconduct for multiple DUI[s]." Id. at 52. He recommended, however, that Mr. Lowry be separated "without delay," i.e., that there be no suspension of his separation. Id.

The CO explained that Mr. Lowry's "conduct in these two incidents severely departed from the expectations of a Chief Petty Officer." Id. At the same time, the CO observed that Mr. Lowry's service over the entire eighteen-year period was "characterized by honest and faithful service in multiple theatres as he safely and successfully led high risk underwater construction projects as the statements of multiple commanding officers attest." Id. The CO acknowledged that MILPERSMAN 1910-214 provides that an "[a]dverse matter from a prior enlistment may not be considered in recommending or authorizing characterization of service." Id. Nonetheless, he opined that "SWC Lowry failed in his current (and previous) enlistment to report the conviction (as required by ALNAV 067/08)"; "failed to report the conviction to his chain of command or the security manager (as required by [Secretary of the Navy Instruction ("SECNAV")] 5510.30)"; and "as a diver failed to report an alcohol related incident (requiring at least temporary suspension of diving duty by MILPERSMAN 1306-912)." Id. The CO stated that he "s[aw] these as a pattern during this enlistment to deliberately conceal his conviction, conduct demonstrating a lack of integrity and moral courage." Id. "[H]ence," he concluded, he recommended "immediate separation with a General (Under Honorable Conditions) characterization." Id.

The CO rejected counsel's contention that the separation proceedings were procedurally flawed because—despite counsel's request to be provided with all relevant information—the Recorder had not supplied him with a copy of the substance abuse screening report that stated that Mr. Lowry was not alcohol dependent. Id. at 53. The CO reasoned that, even assuming that the failure to provide the report was a procedural error, the error was a harmless one and had no effect on the outcome, asserting that the screening report "was available to [Mr. Lowry] directly." Id.

E.      **The Discharge**

The record of the separation board proceedings, including the CO's comments
recommending that Mr. Lowry be separated "without delay," were forwarded to the Chief of
Naval Personnel by correspondence of March 24, 2015. Id. at 30 (citing the CO's comments at
AR 52). But no action was taken to effect the separation for almost a year. Id. at 40. In the
meantime, on July 24, 2015, Mr. Lowry's CO granted his request to reinstate his diving
qualifications with the caveat that his supervisory qualifications be revoked "pending
requalification" in accordance with Navy rules. Pl.'s Mot. to Suppl. the Admin. R. and Mem. in
Supp. ("Pl.'s Mot. to Suppl.") Ex. 3, at 2, ECF No. 21-3.

Although there is no document in the record reflecting his reasoning, the SA agreed with
the CO's recommendation to separate Mr. Lowry immediately and rejected the administrative
separation board's recommendation that the separation be suspended for twelve months.
Accordingly, Mr. Lowry was separated from the Navy on March 3, 2016, and his separation was
not suspended. AR 36. The reason supplied for the separation on DD Form 214 was "misconduct
(serious offense)." Id. His service was characterized as "under honorable conditions (general)."
Id.

IV.     **Proceedings Before the Naval Discharge Review Board and the Board for
        Correction of Naval Records**

There are two administrative bodies that review Navy discharge actions: the Naval
Discharge Review Board ("NDRB") and the Board for Correction of Naval Records ("BCNR").
See Viet. Veterans of Am. v. Sec'y of the Navy, 843 F.2d 528, 531 (D.C. Cir. 1988). The
NDRB, which consists of five Navy officers, is empowered to review a discharge and
recharacterize it "to reflect its findings." 10 U.S.C. § 1553(b)(1). "The BCNR is a wholly
separate body staffed by civilians. Its mandate—to correct any Navy record when 'necessary to
correct an error or remove an injustice,' id. § 1552(a)—has been viewed as broader than that of
the NDRB." Viet. Veterans of Am, 843 F.2d at 531 (citing Strange v. Marsh, 602 F. Supp. 1565,
1570 (D.R.I. 1985)).

Mr. Lowry pursued appeals before both the NDRB and the BCNR. Each was
unsuccessful.

A.      **Naval Discharge Review Board Proceedings**

On or around April 3, 2018, Mr. Lowry invoked his right to review by the NDRB. He
elected that this review be based on the documentary record. AR 252. In his NDRB petition, Mr.
Lowry argued that he had been denied his "due process rights" during the administrative
separation board proceedings because the Recorder "withheld exculpatory and relevant
information indicating that [he] was free of any substance abuse and fully rehabilitated." Id. at
253 (referring to the alcohol screening report). In addition, he complained that the separation
board had improperly "considered matters outside of [his] then-current enlistment to determine
his characterization of service between 15 April 2012 and 14 April 2017." Id. He also argued that

the unit had "failed to address his Post-Traumatic Stress Disorder ("PTSD") and Traumatic Brain Injury ("TBI")." Id.

In a January 31, 2019 decision, the NDRB rejected Mr. Lowry's petition without addressing several of his procedural objections. Id. at 38–45. It observed that he had been "involved in two [DUIs] in his naval service" and that his subsequent "failure to disclose his [DUIs] to his command resulted in the loss of trust." Id. at 42. It agreed that separation was appropriate given that Mr. Lowry's "commander view[ed] 'these as a pattern during this enlistment to deliberately conceal his conviction, conduct demonstrating a lack of integrity and moral courage.'" Id. (quoting the CO's comments). It noted that Mr. Lowry's CO had nonetheless recommended a "more lenient administrative discharge" over a punitive one. Id. The NDRB therefore determined that an upgrade in the characterization of service would be inappropriate. Id.

Turning to Mr. Lowry's contention that PTSD was a mitigating factor in his misconduct, the NDRB noted that it had requested records received from the Department of Veterans Affairs ("VA") and that those records showed that Mr. Lowry "ha[d] a combined 100% VA disability rating, 50% for PTSD/TBI as of March 2016," and that "the VA also stated his 'PTSD/TBI/Alcohol use disorder is in full remission.'" Id. It observed, however, that Mr. Lowry's first conviction occurred in 2001, before his deployment to Iraq. Id. It further reasoned that Mr. Lowry had engaged in "willful misconduct," presumably by failing to disclose his DUIs, and that such willful misconduct "demonstrated he was unfit for further service." Id. The NDRB opined that "[t]he evidence of record did not show that the PTSD was a sufficient mitigating factor to excuse [his] conduct or accountability concerning his actions." Id. It therefore denied Mr. Lowry's request for relief.

### B.      Board for Correction of Naval Records Proceedings

In the meantime, on March 26, 2018, Mr. Lowry had petitioned the BCNR for a correction of his naval record. Id. at 146–228. The arguments in his BCNR petition were similar to those he made to the NDRB. He contended that—in violation of his "due process rights"—the separation board's Recorder, who was not a lawyer, "withheld evidence that was relevant, mitigating, extenuating, and exculpatory in nature," i.e., failed to provide the report prepared by the substance abuse counselor to whom Mr. Lowry was referred after the Navy learned of his DUIs. Id. at 146. Mr. Lowry further argued, as he did before the NDRB, that the administrative separation board improperly considered events that occurred outside of his current enlistment in making its recommendations. Id. at 150, 153–54. In addition, he argued that the Navy had incorrectly determined that his PTSD/TBI did not contribute to the conduct for which he was separated. Id. at 151. He requested that his records be corrected to credit him with ten additional months of service so that he could retire, and that the BCNR provide him with backpay and other relief based on his wrongful discharge. Id. at 155.

In a letter of June 19, 2018, the BCNR advised Mr. Lowry that a preliminary review of his file showed that he had not included adequate documentation to support a claim of PTSD treatment or diagnosis. Id. at 23. It requested that Mr. Lowry provide such documentation within

sixty days. Id. It also advised him that "BCNR protocols require the Board to obtain a medical advisory opinion on all potential or possible PTSD cases." Id.

In an August 11 letter, Mr. Lowry's counsel forwarded the medical records that the VA had considered when it found that he suffered from service-related PTSD. Id. at 71. Several months later, by letter of November 5, 2018, Mr. Lowry's counsel provided further documentation in the form of three pages of notes prepared by a psychotherapist that recorded a diagnosis of PTSD and described a series of psychotherapy sessions that she held with Mr. Lowry between July 23, 2018 and the end of October 2018. Id. at 4–7.

On November 19, 2018, Dr. Molly Summers, a Navy clinical psychologist, supplied the BCNR with an Advisory Opinion regarding Mr. Lowry's PTSD. Id. at 21–22. Dr. Summers based her opinion on the VA's rating decision and the psychotherapist's notes described above. She concluded that, although his VA diagnosis attributed Mr. Lowry's PTSD to his service in Iraq, "it is more difficult to attribute [his] misconduct to PTSD." Id. at 22. To the contrary, she said, "[b]ased on the preponderance of the evidence, it is my considered medical opinion that there is insufficient evidence to attribute the Petitioner's misconduct to PTSD." Id.[4]

By letter of December 16, 2018, Mr. Lowry submitted additional clinical evidence of PTSD in the form of civilian treatment records from Kaiser Permanente. Id. at 12. Dr. Summers reviewed the newly submitted records but they did not change her original opinion. She observed that counsel's submission did not include any "new clinical evidence regarding his misconduct." Id. at 33. While she acknowledged that his PTSD could be attributed to his military service, she again observed that "his alcohol use disorder predates his deployment." Id. She therefore re-affirmed the conclusions she reached in her original Advisory Opinion. Id.

On August 27, 2019, the BCNR denied Mr. Lowry's application for correction of his records. Id. at 26–29. It agreed that Mr. Lowry "likely did suffer from PTSD" as a result of his 2003 deployment in Iraq. Id. at 28. But it rejected Mr. Lowry's argument that his PTSD mitigated the gravity of his misconduct because, according to the BCNR, "the nature of the misconduct for which [he was] separated (failure to disclose [his] civilian arrests) is not misconduct typically associated with PTSD symptoms." Id. The BCNR also rejected Mr. Lowry's allegations of procedural error. It noted that Mr. Lowry had made the argument regarding the withholding of potentially exculpatory information in the letter of deficiency he

---

[4] Dr. Summers reasoned as follows:

> [Mr. Lowry's] first DWI was in 2000, which resulted in his receiving residential treatment for alcohol use in 2001, two years before his deployment. In addition, he had an alcohol-related incident prior to entering the Navy. Thus, his alcohol use predates his PTSD. While excessive alcohol consumption can be a self-medication coping mechanism for PTSD symptoms, the Petitioner consistently denied experiencing trauma symptoms while in service. It seems more reasonable to attribute his 2009 DWI to a relapse in his alcohol use disorder.

AR 22.

submitted in response to the separation board's recommendation, and that "the separation authority had the opportunity to weigh [this] contention, as well as the substantive information [in the report], prior to making a final determination on separation." Id. Finally, it concluded that Mr. Lowry's "misconduct of failing to disclose the civilian arrests extended into [his] final period of enlistment and that the nature of the misconduct was such that a general characterization of service [was] supported by the information in [his] records." Id.

## V.    This Action

On June 5, 2020, Mr. Lowry filed the present suit, challenging the BCNR's decision. ECF No. 1. Among other things, he contends that his procedural rights were violated when the Navy failed to provide him a copy of the results of his alcohol screening until after the separation board hearing. Compl. ¶ 94, ECF No. 1. He also alleges that "[t]o the extent that [the Navy] discharged [him] for failing to report his prior misconduct, this is improper because [he] was only notified that he was being separated based on the two grounds"—i.e., the allegation that launched the NCIS investigation and the multiple DUIs—and neither of them was failure to report. Id. ¶ 97.

The government filed the administrative record on July 30, 2020, ECF No. 10, and Mr. Lowry filed a motion for judgment on the administrative record on September 3, 2020, ECF No. 11. The government filed its cross-motion on November 9, 2020. Def.'s Resp. to Pl.'s Mot. for J. on the Admin. R. and Cross-Mot. for J. on the Admin. R., ECF No. 17. Mr. Lowry filed a response and reply on December 22, 2020, Pl.'s Resp. and Reply in Support of Pl.'s Mot. for J. on the Admin. R., ECF No. 22, as well as an unopposed motion to supplement the administrative record, Pl.'s Mot. to Suppl., ECF No. 21. The government filed its reply on February 12, 2021. Def.'s Reply to Pl.'s Resp. and Reply in Supp. of Pl.'s Mot. for J. on the Admin. R., ECF No. 26.

Briefing on all pending motions has been completed and oral argument was held on the motions via videoconference on February 17, 2021.

## DISCUSSION

## I.    Jurisdiction

Under the Tucker Act, the Court of Federal Claims has jurisdiction to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). While the Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), it does not confer any substantive rights on a plaintiff, United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation, or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

The Military Pay Act, 37 U.S.C. § 204, "confers on an officer the right to the pay of the rank he was appointed to up until he is properly separated from the service." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir. 1997) (quoting Sanders v. United States, 594 F.2d 804, 810 (Ct. Cl. 1979) (en banc)). Accordingly, the Military Pay Act "provides for suit in [the Court of Federal Claims] when the military, in violation of the Constitution, a statute, or a regulation, has denied military pay." Antonellis v. United States, 723 F.3d 1328, 1331 (Fed. Cir. 2013) (quoting Dysart v. United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004)). Further, this Court "may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion." Murphy v. United States, 993 F.2d 871, 873 (Fed. Cir. 1993). Accordingly, this Court has jurisdiction over Mr. Lowry's claim under the Military Pay Act.

## II.     Motions for Judgment on the Administrative Record

The Court of Federal Claims reviews decisions of military correction boards based on the administrative record. Walls v. United States, 582 F.3d 1358, 1367 (Fed. Cir. 2009). Parties may move for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the Court of Federal Claims ("RCFC"). In deciding a motion pursuant to RCFC 52.1, the court makes "factual findings . . . from the record evidence as if it were conducting a trial on the record." Bannum, Inc. v. United States, 404 F.3d 1346, 1357 (Fed. Cir. 2005). "[R]esolution of a motion respecting the administrative record is akin to an expedited trial on the paper record, and the Court must make fact findings where necessary." Baird v. United States, 77 Fed. Cl. 114, 116 (2007). The Court's inquiry is therefore "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." A&D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006). Unlike a summary judgment proceeding, genuine issues of material fact will not foreclose judgment on the administrative record. Bannum, Inc., 404 F.3d at 1356.

## III.     Standard of Review

In military pay cases, the Court reviews the administrative record to determine whether a board's decision is "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." Melendez Camilo v. United States, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983)); see also Walls, 582 F.3d at 1367 (stating that it is "well established that judicial review of decisions of military correction boards is conducted under the APA").

The scope of this judicial review is a deferential one, as "determining who is fit or unfit to serve in the armed services is not a judicial province." Heisig, 719 F.2d at 1156. The arbitrary and capricious standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." Id. at 1157. In determining whether the conclusion is supported by substantial evidence, "all of the competent evidence must be considered . . . whether or not it supports the challenged conclusion." Id. (emphasis omitted). "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence," In re Nuvasive, Inc., 842 F.3d 1376, 1379–80 (Fed. Cir. 2016) (citations omitted), that is, "such relevant evidence as a reasonable

14

mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). And where "reasonable minds could reach differing conclusions on the same evidence," the court cannot "substitute [its own] judgment for that of [the Board]." Heisig, 719 F.2d at 1156.

## IV.    Motion to Supplement the Administrative Record

As noted above, Mr. Lowry has moved to supplement the administrative record. See Pl.'s Mot. to Suppl. The government did not file an opposition to the motion.

The motion requests that the following documents be made part of the record: (1) a California Department of Motor Vehicles Order of Set Aside which restored his California license driving privileges on December 9, 2009, ECF No. 21-1; (2) a February 3, 2015 Character Statement from a former CO (Lieutenant Commander Bisgard), ECF No. 21-2; (3) a copy of a "Special Request/Authorization" form that Mr. Lowry signed on July 22, 2015, and which reflects that his command approved his request to have his diving qualifications reinstated, ECF No. 21-3; and (4) a November 3, 2015 email from Captain Libertore, the NAVFAC EXWC's liaison with the Naval Personnel Command, to Captain Jayson Mitchell, whose subject line reads "Status of Lowry [administrative separation] case," ECF No. 21-4.

When a service member brings an action seeking review of the decision of a military correction board, this Court "reviews the Board's action under the same standard as any other agency action," which "necessarily limits [its] review to the administrative record." Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006); see also Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (observing that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court") (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)). Supplementation of the administrative record is thus proper only in those "cases in which 'the omission of extra-record evidence precludes effective judicial review.'" Axiom Res. Mgmt., Inc., 564 F.3d at 1380 (quoting Murakami v. United States, 46 Fed. Cl. 731, 735 (2000)).

In accordance with 10 U.S.C. § 1553(c), review by correction boards "shall be based on the records of the armed forces concerned . . ." Two of the documents that are the subject of Mr. Lowry's motion to supplement fall into this category: the July 2015 "Special Request/Authorization" form reflecting the reinstatement of Mr. Lowry's diving qualifications, and the email communications concerning the status of the SA's consideration of his separation. Because these documents should have been made part of the administrative record filed with this Court, the Court treats Mr. Lowry's motion to supplement the administrative record as a motion to correct it, and directs that the two documents be added to the administrative record before the Court.

On the other hand, the other two items were not part of the records of the Navy and therefore were not required to be considered by the Board, unless Mr. Lowry submitted them on his own, as he could have done. Further, consideration of the documents is not necessary for the Court to conduct effective review of the BCNR's decision. Accordingly, Plaintiff's Motion to

Supplement the Administrative Record is granted in part—as to ECF No. 21-3 and ECF No. 21-4—and denied as to the remaining documents.

## V.   Merits

On the merits, Mr. Lowry contends that the BCNR's decision was arbitrary, capricious, and contrary to law. He identifies a number of errors that he contends the Navy committed in processing his separation and which the BCNR failed to acknowledge. For the reasons that follow, the Court agrees with Mr. Lowry that the Navy violated his rights under its governing regulations when it based the separation decision on grounds that were not set forth in the separation notice it provided to him. In light of that determination, it is unnecessary to resolve Mr. Lowry's other allegations of error.

It is well established that the military departments, like other federal agencies, are bound by their own regulations. Wagner v. United States, 365 F.3d 1358, 1361 (Fed. Cir. 2004) (citing Service v. Dulles, 354 U.S. 363, 388 (1957)); Carmichael v. United States, 298 F.3d 1367, 1373–74 (Fed. Cir. 2002); Voge v. United States, 844 F.2d 776, 779 (Fed. Cir. 1988). As the Federal Circuit has observed, "[e]ven when Congress has given the military discretion in conducting its affairs, the military is bound to follow its own procedural regulations should it choose to promulgate them." Fisher v. United States, 402 F.3d 1167, 1177 (Fed. Cir. 2005) (citations omitted); see also Adkins v. United States, 68 F.3d 1317, 1323 (Fed. Cir. 1995) (observing that the Federal Circuit "has consistently recognized that, although the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular procedure followed in rendering a military decision may present a justiciable controversy").

In this case, the Navy violated its own regulations in processing Mr. Lowry's separation. As described above, DODI 1332.14 guarantees a service member facing involuntary separation the right to receive notice of: (1) each of the bases of the member's proposed separation, "including the circumstances upon which the action is based"; and (2) "reference to the applicable provisions of the [Navy's] implementing regulation." DODI 1332.14 encl. 5, § 3a(1), App. to Pl.'s MJAR at 13. Similarly, MILPERSMAN 1910-402 requires the Navy to inform the service member of "the basis of the proposed separation, including the circumstances upon which the action is based, and a reference to the applicable provisions of the [MILPERSMAN]." MILPERSMAN 1910-402 ¶ 3.

The purposes of these basic procedural rights are self-evident. Accurate notice of the reasons for the proposed separation affords the service member the opportunity to marshal evidence to respond to the charges and defend himself during separation proceedings. It also ensures that the SA has the benefit of a fully developed record that contains the service member's side of the story and his rebuttal of the grounds upon which the Navy proposes to discharge him.

As the BCNR's decision reflects, however, the Navy's decision to separate Mr. Lowry was based in substantial part (if not entirely) upon his failure to disclose his DUIs to his command. The BCNR, in fact, rejected Mr. Lowry's argument that his PTSD mitigated the

gravity of his misconduct precisely because it understood that the Navy was relying on the failure to disclose to defend the separation decision. It found Mr. Lowry's PTSD irrelevant because "the nature of the misconduct for which [he was] separated" was the "failure to disclose [his] civilian arrests," which the BCNR believed was "not misconduct typically associated with PTSD symptoms." AR 28. It also upheld the "general" characterization of Mr. Lowry's discharge because it believed that his "misconduct," which consisted of his "failing to disclose the civilian arrests," had "extended into [his] final period of enlistment." Id.[5]

But while the BCNR's decision reflects that Mr. Lowry's separation was based on his failure to disclose his arrests and convictions, the notice of separation that the Navy provided to Mr. Lowry did not charge him with that offense. It did not cite the Navy regulations requiring such disclosure or provide any description of the facts showing a failure to disclose. To the contrary, the administrative separation board notice stated that Mr. Lowry would be processed for separation for committing the "serious offense" of "multiple DUIs." Id. at 66.

Mr. Lowry's alleged violation of the regulations requiring disclosure also is not mentioned in the record of the separation board's proceedings. In fact, those regulatory provisions make their first and only appearance in the comments that Mr. Lowry's CO submitted for the SA's consideration after Mr. Lowry had already put on his case and after the separation board had already made its recommendation. In the comments, the CO recommended that Mr. Lowry be separated immediately because he "failed in his current (and previous) enlistment to report the conviction (as required by ALNAV 067/08)"; "failed to report the conviction to his chain of command or the security manager (as required by SECNAV 5510.30)"; and "as a diver failed to report an alcohol related incident (requiring at least temporary suspension of diving duty by MILPERSMAN 1306-912)." Id. at 52.

Because he did not receive notice that the Navy was considering separating him on the basis of the alleged regulatory violations, Mr. Lowry's defense at the separation board hearing consisted of his own testimony and that of character witnesses to the effect that he did not have a drinking problem and was remorseful about his DUIs. The same is true of the two deficiency letters that his counsel wrote in response to the separation board's recommendations. In short, because he did not receive notice that his failure to disclose was being considered as a grounds for separation, Mr. Lowry did not attempt to explain his actions to the separation board, and the SA had no information before him regarding the circumstances of that failure to disclose when he decided to separate Mr. Lowry immediately.[6]

---

[5] The NDRB similarly acknowledged that the Navy relied upon Mr. Lowry's failure to disclose when it separated him. It observed that Mr. Lowry had been "involved in two [DUIs] in his naval service" and that his subsequent "failure to disclose his [DUIs] to his command resulted in the loss of trust." AR 42. It upheld the separation in light of the fact that Mr. Lowry's "commander view[ed] 'these as a pattern during this enlistment to deliberately conceal his conviction, conduct demonstrating a lack of integrity and moral courage.'" Id. (quoting the CO's comments in which he recommended immediate separation).

[6] The Court notes that among the exhibits Mr. Lowry supplied to the board was a copy of the decision in United States v. Serianne. See AR 56. It does not appear, however, that it was taken

Further, Mr. Lowry had additional reasons not to expect that the Navy was relying upon anything other than the DUIs themselves to justify his separation because—notwithstanding that he was expressly criticized for the failure to disclose in his performance evaluation only a few months earlier—that offense was not mentioned at all in the charging document or the documents the Recorder provided to the separation board. To the contrary, the separation board's findings stated that the "[s]pecific evidence" it had relied upon was the evidence showing that Mr. Lowry had committed the two DUIs. Id. at 61.

The Court also concludes that the failure to provide Mr. Lowry with notice of the charges that formed the basis for his discharge was not harmless error. Generally, a procedural error is deemed "harmless" where it does not substantially affect the outcome of a matter. Wagner, 365 F.3d at 1361; see also Christian v. United States, 337 F.3d 1338, 1342 (Fed. Cir. 2003). Some procedural errors, however, cannot be excused as "harmless" because the nature of the error is such that a reviewing body is not able to assess the magnitude of its effect on the outcome. Rogers v. United States, 124 Fed. Cl. 757, 767 (2016) (citing Wagner, 365 F.3d at 1362)). The violation of a regulation that affords a service member the right to be informed of the charges underlying his proposed separation is such an error because there is no way for the Court to judge what the result would have been had Mr. Lowry been given the opportunity to rebut the charges that ultimately formed the basis for his separation.

Finally, the Court observes that—even had the Navy not committed the foregoing harmful error by failing to provide Mr. Lowry with accurate notice of the grounds for his separation—it would still feel compelled to remand the case back to the BCNR given other problematic characteristics of his separation. Specifically, it appears that, to the extent the Navy intended to separate Mr. Lowry because of the DUIs, it may have been improper for it to proceed by charging him with the commission of a "serious offense." AR 66. Both DUIs occurred during Mr. Lowry's prior enlistment. MILPERSMAN 1910-130 paragraph 2 and 1910-142 paragraph 4 state that, absent fraud, when an offense that requires mandatory processing (as do multiple DUIs) occurs during a prior enlistment and is unknown to the Navy at the time of re-enlistment, as here, the service member is to be processed for separation based on "erroneous enlistment." Such processing occurs under MILPERSMAN 1910-402, not 1910-142. See MILPERSMAN 1910-142 ¶ 4. Further, a discharge based on erroneous enlistment must ordinarily be characterized as an honorable one. MILPERSMAN 1910-130 ¶ 8.

The Court similarly has concerns about whether—even leaving aside the issue of inadequate notice—the Navy could properly use Mr. Lowry's failures to disclose his DUIs as the basis of a discharge for the violation of Navy regulations or other misconduct, rather than on the basis of "erroneous enlistment." MILPERSMAN 1910-130 ¶ 2. The BCNR seemed to believe that Mr. Lowry's "misconduct of failing to disclose the civilian arrests extended into [his] final period of enlistment," but this is not a self-evident proposition and would require further explanation by the BCNR. AR 28. The regulation in effect at the time of the DUI offenses was OPNAVIST 5350.4D. It stated that "[m]embers arrested for alcohol-related offense by civil

---

into consideration at all by the separation board; nor did any of the witness testimony address the disclosure issue.

authority (i.e., DUI/DWI, public intoxication, disorderly conduct), shall promptly notify their commanding officer." OPNAVIST 5350.4D ¶ 8(r). The requirement of "prompt" notification, the Court assumes, would be violated at the point that the time had passed in which a notification could still be considered "prompt." Mr. Lowry's arrests occurred in 2001 and 2009. By the time of his re-enlistment in 2012, he had already violated the prompt notification requirement. The Navy regulations discussed above would appear to require that separation based on a failure to promptly disclose the DUI arrests that occurred during a prior enlistment would also be subject to processing as an erroneous enlistment.

In any event, it is unnecessary for the Court to remand the case to the BCNR to get its take on these thorny issues. The BCNR concluded that the Navy separated Mr. Lowry because he failed to disclose the DUIs to his command. It is undisputed that he did not receive notice that the Navy was considering discharging him on this basis. His rights under applicable Navy regulations were therefore violated and his separation was therefore invalid.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the administrative record, ECF No. 11, is **GRANTED** and the government's cross-motion, ECF No. 17, is **DENIED**. Plaintiff's motion to supplement the administrative record, ECF No. 21, is **GRANTED-IN-PART**, and ECF Nos. 21-3 and 21-4 shall be added to the record.

The Court **REMANDS** the matter to the BCNR for the correction of Plaintiff's military record to reflect his reinstatement to active duty in the United States Department of the Navy effective March 3, 2016, and his retirement in accordance with 10 U.S.C. § 7314, effective December 19, 2016. In addition, the BCNR shall issue any orders necessary to ensure that Plaintiff receives back pay and other benefits or allowances to which he is entitled. Finally, the BCNR shall make any other corrections and take any other actions that are required to carry out the Court's instructions.

Remand proceedings shall be completed within 120 days of this decision. The parties shall file a joint report every sixty days advising the Court of the status of the proceedings on remand.

The Court will retain jurisdiction over the case during the course of the proceedings on remand. The Court **STAYS** proceedings in the instant case during that time.

Pursuant to RCFC 52.2(e), the parties shall file notice with the Court within thirty days of the BCNR's decision on remand stating whether that decision affords a satisfactory basis for the disposition of the case and whether the parties require further proceedings before the Court.

The Clerk is directed to serve this Opinion and Order on the Board for Correction of Naval Records' at the following address:

Department of the Navy
Board for Correction of Naval Records

701 S. Courthouse Road, Suite 1001
Arlington, VA 22204-2490

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Chief Judge